UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

JUL 1 5 2014

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | | |
|---|---|---|
| RAMESH  SHARMA<br>15053 Joshua Tree Road<br>Gaithersburg, MD  20878<br>(240) 483-2523 | ) )<br>)<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | Case: 1:14-cv-01191<br>Assigned To : Kessler, Gladys |
| v. | )<br>)<br>) | Assign. Date : 7/15/2014<br>Description: Employ. Discrim. |
| DISTRICT OF COLUMBIA<br>John A. Wilson Building<br>1350 Pennsylvania Avenue, NW, Suite 316<br>Washington, DC 20004 | )<br>)<br>)<br>) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | )<br>)<br>) | |

VERIFIED COMPLAINT

(Race and National Origin Discrimination under Title VII; Age Discrimination under
ADEA; Disability Discrimination under ADA; and Retaliation in Violation of the Title
VII, ADEA and ADA)

JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action under 28 U.S.C. §§1331 and 1332,

because the Amended Complaint alleges violations of the Title VII of Civil Rights Act of

1964 (Title VII), as amended, 42 U.S.C. § 2000e-5(f); and the Age Discrimination in

Employment Act of 1967 (ADEA), as amended, 29 U.S.C. §§ 626(c) and 633a(c), and the

Americans with Disabilities Act of 1990, 42 U.S.C. §§12101, etc. Also, the matter in

controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of

different states.

2.      Venue properly lies within this District pursuant to 28 U.S.C. § 1391 because

Defendant District of Columbia Government is located within the District of Columbia and

because Defendant took the allegedly unlawful acts against Plaintiff within this judicial

district.

## B. THE PARTIES

3.      Plaintiff Ramesh Sharma (also known as Ray Sharma) is a resident of

Gaithersburg, Maryland, and a former employee of the Office of Contracting & Procurement

("OCP"), an agency of the District of Columbia Government ("District").

4.      Plaintiff was an "employee" as defined by Title VII, 42 U.S.C. § 2000e (f); the

ADEA, 29 U.S.C. § 630(f); and the ADA, 42 U.S.C. §12111(4). Plaintiff is not and was not a

public figure.

## C. THE FACTS SUPPORTING PLAINTIFF'S CLAIMS

5.      Plaintiff, a native of India, has been a resident of the United States for some forty

two years, and is a U.S. citizen.

6.      At all relevant times Plaintiff has had impaired hearing, diabetes, and high blood

pressure.

7.      Around 2009, when the events of continued discrimination and retaliation

underlying this complaint began, Plaintiff was 70 years old.

8.      Plaintiff has a bachelor's degree in engineering, a master's degree in

administration, and over thirty years of professional experience in DC and Federal

government contracting, including over 25 years in related management positions in

government contracting, contract administration and litigation support.  On various

occasions, Plaintiff also testified as the Government's "Expert-Witness" in the government contracting field at the U.S. Army Board of Contracts Appeals and the U. S. Courts.

9.      In June, 2009, around the time events under the present complaint began, District officials singled out Plaintiff and solely terminated (Rif'ed) him from his group being abolished in OCP. Plaintiff suffered major salary and other losses that still continue even till today.

10.     At the same time, all others, younger, non-Asians, with no disabilities, in the same abolished group in OCP and in the same job series (# 1102), were directly placed and preselected in lateral jobs in another group in OCP and some in another District agency. They suffered no loss of any kind.

11.     During the preceding years 2004 through 2009, Plaintiff applied for approximately 26 same or similar positions in same contracting field with same MS-14, MS-15 and MS-16 grades, as the five positions under the present complaint.

12.     District repeatedly rated Plaintiff as Well and Highly Qualified (HQ) for same or similar jobs, and interviewed him a few times, but did not select him.

13.     The selectees for all these 26 jobs were younger (in 30's/40'/50's), non-Asians and with no known disabilities. They were much less qualified, and many with no job related supervisory or management experience and some even did not meet the minimum required qualifications.

14.     The events under the above paragraphs # 9 (RIF) and # 10 (26 non-selections) above are part of Plaintiff's previous EEOC complaint filed October 6, 2006, in which EEOC, on September 30, 2010, ruled in his favor on all the 26 non-selections plus his termination (RIF) in 2009. These previous events are part of a separate litigation at an

advance stage under Case No.: 1:10-CV-01033-GK) which is at an advance stage, pending decision.

15.    The present complaint under this case covers District's additional acts of discrimination and retaliation of Plaintiff's non-selections into the following five MS-14, MS-15 and MS-1616 grade positions in the same contracting field:

16.    (Job-1)   Assistant Director, Procurement, Posting # 14670, MS-16 (OCP), Posted August 21, 2009, First-Screening: September 4, 2009.  (Selectee Chris Stewart)

17.    On September 3, 2009, Plaintiff applied for the MS-16 position in District's Office of Contracting and Procurement (OCP). A few months earlier, at least twice, District's Human Resources (DCHR) and OCP rated Plaintiff as Highly Qualified (HQ) for the exact same job, when the predecessor Steve Greber was selected over Plaintiff, for which EEOC ruled in Plaintiff's favor. Greber's selection is part of a separate litigation, pending decision. Within a few months Greber was fired for poor performance, creating this vacancy under the above posting.

18.    District did neither interview, nor select Plaintiff for this position under the above posting # 14670.

19.    District selected Chris Stewart, Younger (in 40/50's), Black Male with no known disability. He has "zero" job related experience in the DC contracting procedures, laws and regulations that he is required to supervise and use in all the contracting functions at OCP. Stewart's experience was mainly in out of state contracting functions with unrelated contracting laws and procedures on daily basis.

20.    Plaintiff has 30+ years of job related DC local contracting experience, including 25+ years in management positions. He used the applicable DC contracting procedure, laws

and regulations on daily basis at CP for seven years, and for 19 years in management

positions at Washington Metro (WMATA), an Interagency of the DC (& MD/VA)

government.

21.     (Job-2) Supervisory Contract Specialist, MS-15 (OCP), Posting # 15506, Posted:

January 28, 2010; First-Screening: February 10, 2010.  (Selectee: Courtney Latimore)

22.     On February 9, 2010, Plaintiff applied for this position in District's Office of

Contracting and Procurement (OCP). DCHR and OCP repeatedly rated Plaintiff as Highly

Qualified (HQ) for the same MS-15 jobs, including twice for the higher grade MS-16,

Assistant Director position that directly supervises the above position. Also, EEOC had

previously ruled for Plaintiff's on his non-selections into exactly similar positions posted

before, which is part of a separate litigation, pending decision.

23.     District did neither interview, nor select Plaintiff for the position under above

posting # 14670.

24.     District selected Courtney Latimore, Younger (in 30/40's), Black Female with no

known disability. She has only about one or two years job related supervisory experience (v.

Plaintiff's 25+ years experience in directly job related contracting management positions)

and only about three to five years in DC government contracting handling mostly small

purchase orders and simple contracts (v. Plaintiff's directly job related 30+ years experience

handling almost all types and sizes of DC contracts, plus he qualified as government's

"Expert Witness" at the US Courts, etc.). A few months before the above posting, OCP

officials groomed, pre-selected and directly placed Latimore in the above position.

25.     District has failed to maintain any documents related to Plaintiff's non-selection

and Latimore selection for this job, since District wrote to EEOC they are unable to find such

documents. On similarly missing documents for the previous 26 non-selections, now under litigation, EEOC, around September 30, 2010, ruled against the District, citing violations of federal EEOC laws requiring District to maintain all such records related to pending EEOC complaints.

26.     (Job-3) Supervisory Contract Specialist, MS-15 (OCP), Posting # 13571, Posted: June 30, 2009, First Screening: July 14, 2009.  (Selectee Paulk Drexel)

27.     On July 8, 2009, Plaintiff applied for this position in District's Office of Contracting and Procurement (OCP). Earlier, DCHR and OCP repeatedly rated Plaintiff as Highly Qualified (HQ) for the same MS-15 job and twice for the higher grade MS-16, Assistant Director's position that directly supervises the above job. Previously EEOC had ruled in Plaintiff's favor on exactly similar positions, now part of a separate litigation.

28.     District did neither interview, nor select Plaintiff for the position under the above posting # 13571.

29.     District selected Paulk Drexel, Younger (in 40/50's), Black Male with no known disability. He has "zero" job related supervisory experience in DC contracting procedures, laws and regulations that he is required to supervise and use on daily basis in all the contracting functions at OCP. Drexel basically has non DC government contracting experience with unrelated contracting laws and procedures. Within months, Drexel left his job at OCP, since he could not perform the required functions.

30.     Plaintiff has 30+ years of directly job related DC contracting experience, including 25+ years in related management positions. He used the applicable DC laws and contracting procedures on daily basis at OCP for seven years, plus 19 years at Washington Metro (WMATA), an Interagency of the DC (& MD/VA) government.

31.     (Job-4) Contracts Manager (same as Supervisory Contract Specialist in OCP), MS-14 (Child & family Services Agency or "CFSA"), MS-14, Posting # 15839, Posted: April 15, 2010, First-Screening date: April 29, 2010.  (Selectee: Tamika Place)

32.     On April 27, 2010, Plaintiff applied for this position, which is same as MS-14 Supervisory Contract Specialist position at OCP, performing the same District's contracting functions. Plaintiff was highly qualified and performed the same plus more complex contracting functions at OCP for years. District also repeatedly rated Plaintiff as Highly Qualified (HQ) and interviewed him for even higher grade MS-15 (Manager) and MS-16 (Assistant Director) positions that supervises such lower grade Ms-14 positions.

33.     Plaintiff was neither interviewed, nor selected for the above position under Posting # 15839.

34.     District selected Tamika Place, Younger (in 30/40's), Black Female with no known disability. She has "zero" job related experience in DC government contracting functions and related supervision. Her experience is mainly in workmen comp, personal injury and other insurances and claims processing, which are totally unrelated to this job in contracting field. She mainly worked in the District's "Risk Insurance" department.

35.     Plaintiff has 30 years of directly job related contracting experience, including 25+ years in related contracting management positions, plus he testified as government's "Expert-Witness" at the U.S. Courts, etc.

36.     District also denied Plaintiff, a RIF'ed employee, his rights of priority placement in this position of the same grade 14 and in the same contracting field, that he occupied when he was RIF'ed in 2009, as required under District's Displaced Employee Placement (DEP) and Agency Replacement and Priority Placement (ARPP) programs.

37.     District has failed to maintain any documents related to Plaintiff's non-selection and Tamika Place selection for this job, since District could not disclose them to EEOC. On similarly missing documents for the previous 26 non-selections, now under litigation, EEOC, around September 30, 2010, ruled against the District, citing violations of federal EEOC laws requiring District to maintain all such records related to pending EEOC complaints.

38.     (Job-5) Contract Compliance Manager (same as Supervisory Contract Specialist in OCP), MS-14 (Office of Deputy Mayor Planning & Economic Development or DMPED), Posting # 13293, Posted: October 2, 2009; Closing date: Open until filled. (Selectee: Jacqueline McDonald)

39.     On or about April 27, 2010, applied for this position, which is same as Supervisory Contract Specialist position at OCP, with major contracting functions and responsibilities that he had performed at OCP for years, especially handling almost all types of design and construction contracts.

40.     Plaintiff has unmatched and unique qualifications of an engineering degree and an advance administration degree, plus more than 30 years of directly job related contracting experience, including 25 years in related management positions. For seven years at OCP, Plaintiff handled the same design and construction contracts, including those for DMPED, and for 19 years at Washington Metro, an Interagency of DC (&MD/VA) government, he supervised and managed hundreds of design and construction contracts and testified as government's "Expert-Witness" at the U.S. Courts and US Army Engineering Board of Contract Appeals.

41.    District repeatedly rated Plaintiff as Highly Qualified (HQ) and interviewed him for the same grade MS-14 positions, and even higher grade MS-15 (Manager) and MS-16 (Assistant Director) positions in contracting that supervises such MS-14 grade supervisors.

42.    District neither interviewed, nor selected Plaintiff for the above position under posting # 13293.

43.    District selected Jacqueline McDonald, Younger (in 30's/40's), Black Female, with no known disabilities. She has "zero" experience in job related major functions of design and construction contracting and related supervision.

44.    District also denied Plaintiff, a RIF'ed employee, his rights of priority placement in this position of same grade 14 and in the same design and construction contracting field, he held when RIF'ed, as required under District's Displaced Employee Placement (DEP) and Agency Replacement and Priority Placement (ARPP) programs.

45.    District has failed to maintain any documents related to Plaintiff's non-selection and Jacqueline's selection into the above titled position, since District could not disclose them to EEOC. On similarly missing documents for the previous 26 non-selections, now under litigation, EEOC, around September 30, 2010, ruled against the District, citing violations of the federal EEOC laws that require District to maintain all such records relating pending EEOC complaints.

46.    Around September 2009, Plaintiff called DCHR general enquiry phone line at least twice, and enquired about status of the three (of five above) jobs in OCP, for which he applied, but was given no information if the vacancies were filled. Instead DCHR representative asked him to contact OCP managers since DCHR has no related files, and

OCP managers should know the status. Next day, Plaintiff called OCP/HR manager, and left two messages, but she never returned his calls.

47.     About a week later, Plaintiff visited DCHR and OCP in person. Once again, DCHR representative asked him to go see OCP/HR manager who supposedly has the files. He waited for more than an hour in OCP reception for the OCP/HR Manager, but she failed to show up. Then, he told another OCP official about the problem, when the OCP/HR Manager came and told Plaintiff OCP does not have the related for these three jobs and could not give out status information which only DCHR is allowed to provide. Plaintiff asked her to call DCHR and not make him go back and forth, and someone in District should provide the basic information if these positions are filled or selections are still pending. She got upset and rudely said he must leave the reception area and the building, both of which are supposed to be public areas.

48.     Months later, around June/July, 2010, Plaintiff again went in person to DCHR to enquire about the status of the above two additional jobs (in CFSA and DMPED) he applied for, plus the three jobs he had enquired before. Once again, DCHR representative gave home same story they do not have the related files and he must contact the CFSA and DMPED offices who have the files.

49.     About a week later, Plaintiff went to DMPED in person to enquire about the status of the one of above jobs for DMPED. He could only see the receptionist, who talked to someone in the office and the same story and said he should contact DCHR which is allowed to give out status information. They could not tell him if the job is filled or still open.

50.     Next day, he also called CFSA's HR specialist about one of the above job at CFSA he applied for. They could not say who has the files, and asked him to contact DCHR which is supposed to provide the status information if job is filled or still open.

51.     Around late summer (August) 2010, Plaintiff called and/or visited a few ex-colleagues at OCP, CFSA and DMPED to enquire about the above five job vacancies. They were afraid of providing any information for fear of retaliation, but hesitantly provided limited, informal and unconfirmed information about these five job selections and possible selectees in the subject job titles, but no confirmation of exact positing numbers.

52.     Plaintiff waited few months with a hope someone in District will provide some basic, formal and confirmed information on status of all five above jobs, but with no luck.

53.     Following facts show the pattern and trend, as background information on the District's continuing discrimination and retaliation against Plaintiff (and other Asians) during the immediate preceding years (2003 through 2009). These facts are relevant to the present complaint, however, the related claims are not duplicated in the present complaint since they part of a separate litigation at advance stage, pending decision.

54.     In January, 2003, during his first interview when Plaintiff was hired in District's OCP as Senior (Lead) Contract Specialist position, Grade-14, Karen Hester, Manager, Contracting (OCP), asked Plaintiff if he was willing to do all types of work she would assign him, including clerical, typing, and filing work, because she thought most people from his part of the world (South Asia), like India, Pakistan, and Bangladesh were very lazy and made poor supervisors or leaders since she had one Bangladeshi supervisor, Hares Sayed, who did not want to do any clerical or secretarial work and she wanted to fire him soon.

55.     A few weeks later, Plaintiff observed that Ms. Hester constantly harassed Mr. Sayed and finally forced him out of his supervisory job in the same group.

56.     On or about February 19, 2006, Ms. Hester temporarily promoted Plaintiff to the Interim (Acting) position of Supervisory Contract Specialist, MS-14. Ms. Hester told him not to apply when this position is soon posted as permanent position because Geoffrey Mack (who is African-American), being "younger" (in 40's) needed a break with a permanent promotion and a faster salary jump than Plaintiff (in 60's). She also acknowledged that she was doubtful about Mr. Mack's performance since he had never previously been a contracting supervisor, but would try him.

22.     Months later, Ms. Hester directly placed less or un-qualified Ms. Diane Wooden (younger in 40's or 50's, non-Asian with no known disability) in Supervisory Contract Specialist, MS-14 position.  She had zero supervisory experience (v. Plaintiff's 25 yrs in job related management position), and only a high school graduation (v. Plaintiff's BS-Engg and Masters in Administration). Plaintiff applied, but was never interviewed or selected.

23.     On or around February 20, 2008, OCP found that Plaintiff was well qualified and interviewed him for the position of Assistant Director, Procurement, MS-16. Mr. Steven Greber (younger in 40's, non-Asian and with no known disabilities), less qualified with no job related experience in District contracting and management experience was selected, and within months he was fired for poor performance.

57.     During a meeting in June or July 2008, Mr. Giles, OCP Chief of Staff, during the debriefing told Plaintiff that Mr. Gragan, the OCP selecting official, had stated that Plaintiff was "too old" for the position, with an "old outdated vision, and outdated management experience." Mr. Giles also said that Mr. Gragan was looking only for someone with a new and fresh vision.

58.     In April 2008 Plaintiff learned Mr. Ken Morrow (Younger, Non-Asian with no known disability) was preselected and directly placed in the position of Supervisory Contract Specialist, MS-14, in OCP. Plaintiff had repeatedly applied and fully qualified for this position twice in 2007 under # 5677 and 7949 and even highly qualified and interviewed for two levels higher Assistant Director, who supervises this position, but he was not considered for this lower level position.

59.     On or about June 20, 2008, Plaintiff, a diabetic, was working on multiple tasks for Mr. Giles, including reviewing some urgent bids that had just come in. He had no time to eat anything since the morning, before rushing to Mr. Giles's weekly staff meeting. Plaintiff suddenly felt dizzy and light-headed and told Mr. Giles he did not feel well, might be very low on sugar, and must leave to get some sugar. However, Mr. Giles ignored him and continued to argue.

60.     Therefore, Plaintiff, who has poor hearing and who was sitting at the far end of a long table, repeated his request a little louder. Mr. Giles told him he was disturbing him. Plaintiff got up, barely able to keep his balance due to hypoglycemia, went closer to Mr. Giles, and told him he could barely stand and asked him to call 911 because he could go into diabetic coma. Mr. Giles again ignored Plaintiff and threatened to take disciplinary action against him.

61.     Plaintiff begged him to call for help because he was not well enough to find his own cell phone and call for help. Instead of calling 911 for help, Mr. Giles said, "You are violating my physical space."

62.     Plaintiff left the room, barely able to walk, and slowly walked to his office, holding onto side walls so he would not fall. At the time Plaintiff was in danger of suffering

a diabetic coma and possibly death. After he reached his office, he immediately ate some sugar and took his sugar reading, which was in very low 50's.

63.     That same day, Plaintiff filed a complaint with the District of Columbia Office of Disability Rights against Mr. Giles for disability discrimination. Plaintiff's complaint was referred to OCP's ADA/EEO counselor, whose name, upon information and belief, is Angela Bullard.

64.     Soon after that, Mr. Giles falsely accused Plaintiff of misconduct in the meeting and pressured other staff to provide supporting statements in wording he suggested to the staff through a draft he circulated through Ms. Wooden. One temporary contractor employee, Lawana Lawson, refused to provide the false or manipulated statement which Mr. Giles wanted. For that reason, within few days, Mr. Giles fired her.

65.     In or about June 2008, Ms. Wooden, Plaintiff's supervisor, inappropriately issued him a letter of admonition, based on Mr. Giles's false statements about Plaintiff's actions at the June 20, 2008 meeting. At the same time she told Plaintiff she did not want to issue such letter, but Mr. Giles forced her to do so.

66.     Beginning in August 2008 Plaintiff sought help from his U.S. Congressman, Rep. Chris Van Hollen, in stopping discrimination and retaliation against him.

67.     At about the end of March 2009, during his last week at OCP, Mr. Reed, Plaintiff immediate boss at the time, told Plaintiff to be very careful about his job because Mr. Gragan, (Director, OCP) and Mr. Giles were targeting him (Plaintiff) to be pushed out because of his various complaints to various authorities. Mr. Reed added that around October 2008, within the first week after he came on board, he (Mr. Reed) had refused to fire Plaintiff

and had told the management that he did not know Plaintiff well enough to know about any faults of his, and therefore, had refused to fire him.

68.     In sum, Defendant had two postings for MS-14 grade position in the contracting management field. Plaintiff was fully and highly qualified and even held the same Grade-14 positions for years in the same job category of contracting supervision and management. District repeatedly rated Plaintiff as Highly Qualified (HQ) and interviewed him for even higher level MS-15 Manager and MS-16 Assistant Director positions that supervise such MS-14 positions under the above postings. District did not select Plaintiff for any of the above two positions. District also denied Plaintiff, a RIF'ed employee, his priority placement rights for these same grade 14 positions in same contracting field, under District's Displaced Employees Placement (DEP) and Agency Replacement and Priority Placement (ARPP) programs.

69.     In sum, Defendant had three postings for openings in the Supervisory Contract Specialist (MS-15) positions at OCP. These positions reported to the Assistant Director, Procurement MS-16. District repeatedly rated Plaintiff as Highly Qualified and interviewed him for such MS-15 and even for the next higher level MS-16 Assistant Director Procurement positions that directly supervises the above MS-15 position. District did not select Plaintiff for any the above two MS-15 positions.

70.     In sum, Defendant had one opening for the position of Assistant Director, Procurement (MS-16) position. A few months earlier, District rated Plaintiff as Highly Qualified (HQ) and interviewed him for the same job under previous posting when another less qualified person, Steve Greber (Younger and non-Asian) with zero job related DC government contracting experience, was selected over Plaintiff. Greber selection is part of

previous EEOC complaint in which EEOC ruled for Plaintiff. This is part of a separate litigation at advance stage, pending decision. Within months of start, Greber was fired for poor performance, creating the above vacancy. Plaintiff was once again rated as Highly Qualified (HQ) and scheduled for an interviewed for the above job, but suddenly some OCP official removed his name from the interview list.  District did not select him for the above MS-16 position.

71.    All of the above five MS-14, MS-15, and MS-16 positions claimed under this complaint, were filled by employees that were all non-Asians and different race from Plaintiff (Asian).  All were African-American, younger (30's/40's/50's) and with no known disabilities like the Plaintiff (70's, hearing impaired with diabetes and high blood pressure).

72.    On April 29, 2011, Plaintiff filed his EEOC complaint about his non-selections for following six positions.

73.    (Job-1)  Assistant Director, Procurement, Posting # 14670, MS-16 (OCP), Posted August 21, 2009, First-Screening: September 4, 2009.  (Selectee Chris Stewart)

74.    (Job-2) Supervisory Contract Specialist, MS-15 (OCP), Posting # 15506, Posted: January 28, 2010; First-Screening: February 10, 2010.  (Selectee: Courtney Latimore)

75.    (Job-3) Supervisory Contract Specialist, MS-15 (OCP), Posting # 13571, Posted: June 30, 2009, First Screening: July 14, 2009.  (Selectee Paulk Drexel)

76.    (Job-4) Contracts Manager (same as Supervisory Contract Specialist in OCP), MS-14 (Child & family Services Agency or "CFSA"), MS-14, Posting # 15839, Posted: April 15, 2010, First-Screening date: April 29, 2010.  (Selectee: Tamika Place)

77.    (Job-5) Contract Compliance Manager (same as Supervisory Contract Specialist in OCP), MS-14 (Office of Deputy Mayor Planning & Economic Development or DMPED),

Posting # 13293, Posted: October 2, 2009; Closing date: Open until filled. (Selectee: Jacqueline McDonald)

78.     (Job-xxx) Supervisory Contract Specialist, MS-15 (OCP), Posting # 12942, Posted: April 2, 2009; Closing: April 9, 2009. Plaintiff applied for this position on April 9, 2009. At the time of filing the EEOC complaint on April, 2010, Plaintiff's understanding of the selectee's name was Ken Morrow, which he used in his EEOC complaint. This was based on the informal and unconfirmed information he received at the time. Now, the new formal District's information received from EEOC under FOIA, it shows the correct name of selectee as John Verghese. His selection is part of a separate litigation, plus previous EEOC complaint, and is not duplicated herein. Therefore, this job selection under posting # 12942 is not included in the present complaint. District also has agreed.

79.     On or about September 30, 2010, EEOC's Washington Field Office issued a determination in favor of Plaintiff on all the 26 non selection plus his termination (RIF) in 2009, part of a separate litigation. Among other things, EEOC stated:

The evidence obtained established that DC violated and continues to violate the recordkeeping requirements of Title VII and ADEA found at 29 C.F.R. §§ 1602.14 and 1627.3(a) respectively, by failing to maintain application records, vacancy announcement information, vacancy cancellation information and other personnel records relevant to the charge, despite the statutory and regulatory requirements to preserve such records.

80.     In addition, EEOC stated:

Moreover, despite requests from the Commission, Respondent failed to articulate legitimate nondiscriminatory reasons for why Charging Party was not selected for many of the vacancies Charging Party applied for, some of which were ultimately filled by other candidates. Additionally, Respondent failed to articulate legitimate nondiscriminatory reasons for selecting Charging Party for the RIF over less senior, younger, non-Asian and non-Indian co-workers. As such, I have inferred that examination of Respondent's evidence would not refute the Charging Party's allegations. Therefore, I have determined that the evidence provided by the Charging Party establishes reasonable cause to believe that Respondent violated Title VII and the ADEA for failure to promote, failure to hire and discharge based on race, national origin and age.

81.     On April 25, 2014, Plaintiff received EEOC's Right To Sue letter dated April 22,

2014, with no finding relating to the five non-selections under this complaint, and it states:

> The EEOC issues the following determination: Base upon its investigation, the EEOC is
> unable to conclude the information obtained establishes violations of the statutes. This
> does not certify that the respondent is in compliance with the statutes. No finding is made
> as to any other issues be construed as have been raised by this charge.

82.     Because Defendant discriminated and retaliated against Plaintiff by denying him

many promotions, and his priority placement rights under District's DEP and ARPP

programs, and engaging in other acts of discrimination and retaliation, Plaintiff has suffered

significant loss of income, as well as damage to his professional reputation, and his health.

83.     Since his termination and above non-selections, Plaintiff has been unable to find a

position comparable in income to the positions he once held in OCP

84.     Plaintiff also has suffered and is suffering significant emotional and physical

distress.

## STATEMENT OF PLAINTIFF'S CLAIMS

### Count I:  Race/National Origin Discrimination
### (Title VII)

85.     Plaintiff adopts and incorporates by reference paragraphs 1-84 above.

86.     Title VII makes it unlawful for an employer to discriminate in employment on the

basis of race or national origin.

87.     As indicated above, Plaintiff is a native of India and is Asian.

88.     Defendant unlawfully discriminated against Plaintiff on the basis of his race

and/or national origin.

89.     By not selecting Plaintiff for the above described five positions under this complaint, Defendant discriminated against Plaintiff on the basis of his race and/or national origin.

90.     Specifically Defendant engaged in race and/or national origin discrimination by willfully not selecting Plaintiff for the following five positions:

(Job-1):     Assistant Director, Procurement, Posting # 14670, MS-16 (OCP), Posted August 21, 2009, First-Screening: September 4, 2009.  (Selectee Chris Stewart)

(Job-2):     Supervisory Contract Specialist, MS-15 (OCP), Posting # 15506, Posted: January 28, 2010; First-Screening: February 10, 2010.  (Selectee: Courtney Latimore)

(Job-3):     Supervisory Contract Specialist, MS-15 (OCP), Posting # 13571, Posted: June 30, 2009, First Screening: July 14, 2009.  (Selectee Paulk Drexel)

(Job-4):     Contracts Manager (same as Supervisory Contract Specialist in OCP), MS-14 (Child & family Services Agency or "CFSA"), MS-14, Posting # 15839, Posted: April 15, 2010, First-Screening date: April 29, 2010.  (Selectee: Tamika Place)

(Job-5):     Contract Compliance Manager (same as Supervisory Contract Specialist in OCP), MS-14 (Office of Deputy Mayor Planning & Economic Development or DMPED), Posting # 13293, Posted: October 2, 2009; Closing date: Open until filled. (Selectee: Jacqueline McDonald)

91.     All of these MS-14, MS-15, and MS-16 positions were filled by employees of a different race and/or national origin from Plaintiff.  Almost all selectees were African-American.

92.     As a result of Defendant's malicious violations of Title VII, Plaintiff has suffered and continues to suffer injuries, including loss of past, present, and future earnings and benefits, and considerable mental distress.

Count II: Age Discrimination (ADEA)

93.     Plaintiff adopts and incorporates by reference paragraphs 1-92 above.

94.     The ADEA makes it unlawful for an employer to discriminate in employment on the basis of age.

95.     As indicated above, at all relevant times Plaintiff was not only over 40; he was over 70 years old.

96.     Defendant unlawfully discriminated against Plaintiff on the basis of his age.

97.     By not selecting Plaintiff for the above described five positions under this complaint, Defendant discriminated against Plaintiff on the basis of his age.

98.     Specifically Defendant engaged in age discrimination by willfully not selecting Plaintiff for the following five positions:

(Job-1):     Assistant Director, Procurement, Posting # 14670, MS-16 (OCP), Posted August 21, 2009, First-Screening: September 4, 2009. (Selectee Chris Stewart)

(Job-2):     Supervisory Contract Specialist, MS-15 (OCP), Posting # 15506, Posted: January 28, 2010; First-Screening: February 10, 2010. (Selectee: Courtney Latimore)

(Job-3):     Supervisory Contract Specialist, MS-15 (OCP), Posting # 13571, Posted: June 30, 2009, First Screening: July 14, 2009. (Selectee Paulk Drexel)

(Job-4):     Contracts Manager (same as Supervisory Contract Specialist in OCP), MS-14 (Child & family Services Agency or "CFSA"), MS-14, Posting # 15839, Posted: April 15, 2010, First-Screening date: April 29, 2010. (Selectee: Tamika Place)

(Job-5):  Contract Compliance Manager (same as Supervisory Contract Specialist in OCP), MS-14 (Office of Deputy Mayor Planning & Economic Development or DMPED), Posting # 13293, Posted: October 2, 2009; Closing date: Open until filled. (Selectee: Jacqueline McDonald)

99.  All of these MS-14, MS-15, and MS-16 positions were filled by employees of a younger age different from Plaintiff (70's). Almost all selectees were in 30's/40's/50's.

100.  As a result of Defendant's malicious violations of ADEA, Plaintiff has suffered and continues to suffer injuries, including loss of past, present, and future earnings and benefits, and considerable mental distress.

101.  As a result of Defendant's willful, malicious violations of the ADEA, Plaintiff has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

Count III:  Disability Discrimination (ADA)

102.  Plaintiff adopts and incorporates by reference paragraphs 1-101 above.

103.  The ADA makes it unlawful for an employer to discriminate in employment on the basis of disability.

104.  As indicated above, at all relevant times Plaintiff was hearing-impaired, with diabetes and high blood pressure.

105.  Defendant unlawfully discriminated against Plaintiff on the basis of his disabilities.

106.  By not selecting Plaintiff for the above described five positions under this complaint, Defendant discriminated against Plaintiff on the basis of his disabilities.

107.     Specifically Defendant engaged in disabilities discrimination by willfully not
selecting Plaintiff for the following five positions:

(Job-1):          Assistant Director, Procurement, Posting # 14670, MS-16 (OCP), Posted
August 21, 2009, First-Screening: September 4, 2009.  (Selectee Chris Stewart)

(Job-2):          Supervisory Contract Specialist, MS-15 (OCP), Posting # 15506, Posted:
January 28, 2010; First-Screening: February 10, 2010.  (Selectee: Courtney Latimore)

(Job-3):          Supervisory Contract Specialist, MS-15 (OCP), Posting # 13571, Posted:
June 30, 2009, First Screening: July 14, 2009.  (Selectee Paulk Drexel)

(Job-4):          Contracts Manager (same as Supervisory Contract Specialist in OCP),
MS-14 (Child & family Services Agency or "CFSA"), MS-14, Posting # 15839, Posted:
April 15, 2010, First-Screening date: April 29, 2010.  (Selectee: Tamika Place)

(Job-5):          Contract Compliance Manager (same as Supervisory Contract Specialist in
OCP), MS-14 (Office of Deputy Mayor Planning & Economic Development or
DMPED), Posting # 13293, Posted: October 2, 2009; Closing date: Open until filled.
(Selectee: Jacqueline McDonald)

108.     All of these MS-14, MS-15, and MS-16 positions were filled by employees with
no known disabilities and different from Plaintiff, hearing-impaired and with diabetes and
high blood pressure.

109.     As a result of Defendant's malicious violations of ADA, Plaintiff has suffered and
continues to suffer injuries, including loss of past, present, and future earnings and benefits,
and considerable mental distress.

<u>Count IV</u>:  <u>Retaliation</u>
<u>(Title VII, ADEA and ADA)</u>

110.     Plaintiff adopts and incorporates by reference paragraphs 1-109 above.

111.    Title VII, 42 U.S.C. § 2000e-3(a), the ADEA, 29 U.S.C. § 623(d), ADA 42
U.S.C., etc, and regulations promulgated under these statutes prohibit Defendant from
retaliating against employees for complaining about practices which the employees
reasonably and in good faith believe are discriminatory, as well as for initiating and
processing administrative EEO/EEOC complaints.

112.    As indicated above, between 2006 and 2010, Plaintiff repeatedly and openly
opposed employment practices that he believed were discriminatory and retaliatory under
Title VII and/or the ADEA and/or ADA, and complained that Defendant was discriminating
and retaliating against him and other employees based on their race, national origin, age and
disabilities.

113.    By opposing perceived race, national origin, age and disabilities discrimination on
the job, Plaintiff engaged in protected activities under Title VII, the ADEA and the ADA.

114.    Defendant was aware of these protected opposition activities, when or shortly
after Plaintiff engaged in them.

115.    Defendant repeatedly took adverse actions against Plaintiff, including denying
him selections in five positions listed in Counts I, II and III above, because of his protected
"opposition" activities.

116.    As indicated above, between October 2006 and April, 2011, Plaintiff filed two
EEOC complaints. First EEOC complaint is for earlier non-selections in 26 same and/or
similar jobs, and his RIF in 2009, which are part of a separate litigation at advance stage,
pending decision. Second EEOC complaint is for the above five non-selections claimed
under the present complaint.

117.    Defendant was aware of these protected "participation" activities when or shortly after the Plaintiff engaged in them.

118.    Defendant took adverse actions against Plaintiff, including denying him the promotions listed in Counts III and IV above, because of his protected EEOC "participation" and pending EEO litigation activities.

119.    Defendant thus violated Title VII, the ADEA and ADA by retaliating against him because of his protected opposition and participation activities.

120.    As a result of Defendant's willful, malicious retaliation against him, Plaintiff has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

## E. REMEDIES

121.    WHEREFORE, Plaintiff respectfully requests that the Court issue a judgment granting him the following relief from Defendant:

122.    A declaratory judgment that Defendant violated the Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, and the Americans with Disabilities Act of 1990;

123.    An order retroactively placing Plaintiff to one of the highest grade positions (MS-14, MS-15, or MS-16) for which it denied him a selections, pursuant to the Title VII, 42 U.S.C. § 2000e-5(g)(1); the ADEA, 29 U.S.C. § 626(b); and the ADA, 42 U.S.C., etc.

124.    Back pay, taking into account all intervening cost of living adjustments and step increases, including pension contributions associated with the reinstatement, which Plaintiff has lost by virtue of his denial of promotions and his termination;

125.    Future earnings lost as a result of Defendant's discrimination and retaliation, pursuant to the Title VII, 42 U.S.C. § 2000e-5(g)(1); the ADEA, 29 U.S.C. § 626(b); and the ADA, U.S.C., etc.

126.    Compensatory damages in the amount of $300,000 under Title VII, the ADEA, ADA, and 42 U.S.C. §1981a(b)(3)(A), etc. for the emotional distress, embarrassment, and humiliation Plaintiff suffered and continues to suffer as a result of Defendant's discrimination against him on the basis of his race, national origin, and age;

127.    Liquidated damages in the same amount as the other lost compensation awarded herein, for Defendant's willful age discrimination against Plaintiff, pursuant to the ADEA, 29 U.S.C. § 626(b);

128.    Other pecuniary and non-pecuniary damages in an amount to be determined at trial;

129.    Prejudgment and postjudgment interest thereon, effective the dates of the violations, pursuant to the Title VII, 42 U.S.C. § 2000e-5(g)(i); the ADEA, 29 U.S.C. § 626; and ADA, 42 U.S,C, etc.

130.    Reasonable costs and attorneys' fees pursuant to the Title VII, 42 U.S.C. § 2000e-5(k); and the ADEA, 29 U.S.C. § 626(b); and ADA, 42 U.S.C., etc.

131.    Such other and further relief as to the Court seems just and warranted.

F. EXHAUSTION OF ADMINISTRATIVE REMEDIES

132.    On or about, April 29, 2011, Plaintiff filed a complaint of race, national origin, age, and disability discrimination and retaliation with EEOC under Title VII, the ADEA, and the ADA.

133.    On or about April 25, 2014, Plaintiff received EEOC's a right to sue letter (Notice Of Rights) dated April 22, 2014 with no finding (copy attached). EEOC stated it is unable to conclude that the information obtained establishes violations of the statutes and this does not certify respondent (Defendant) is in compliance with the statutes.

134.    All of the above new Title VII, ADEA and ADA claims were included in the EEOC complaint filed on April 29, 2011.

### G. JURY TRIAL DEMAND

135.    Plaintiff requests a jury trial on all issues of fact and damages arising herein.

### H. VERIFICATION

136.    I hereby certify under penalty of perjury that I am the plaintiff in the above-captioned case; that I have read the foregoing Verified Amended Complaint; and that the facts related herein are true and correct to the best of my knowledge, information, and belief.

Executed at Gaithersburg, Maryland, this 15th day of July, 2014.


Respectfully submitted,


RAMESH  J. Sharma    (Pro Se)
15053 Joshua Tree Road
Gaithersburg, MD 20878
(240) 483-25423
raymdusa a hotmail.com

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:   Ramesh Sharma<br>15053 Joshua Tree Rd.<br>Gaithersburg, MD 20878 | From:   Washington Field Office<br>131 M Street, N.E.<br>Suite 4NW02F<br>Washington, DC 20507 |

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|
| EEOC Charge No. | EEOC Representative | Telephone No. |
| **570-2012-00496** | **Andrea T. Banks,**<br>**Program Analyst** | **(202) 419-0734** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

**APR 2 2 2014**

| | | |
|---|---|---|
| Enclosures(s) | **Mindy E. Weinstein,**<br>**Acting Director** | (Date Mailed) |

cc:   **DC GOVERNMENT Office of Attorney General**
c/o Margaret Radabaugh, Asst. Atty. General
441 4th St., N.W. Suite 1180N
Washington, DC 20001

Enclosure with EEOC
Form 161 (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Washington Field Office
131 M Street, NE
Suite 4NW02F
Washington DC 20507

OFFICIAL BUSINESS

DISMISSAL AND NOTICE OF RIG...

From:   Washi
131 M
Suite
Washi

Ramesh Sharma
15053 Joshua Tree Rd.
Gaithersburg, MD 20878

2C8782548 CO11